UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHNNY L. JONES,

Plaintiff,

v. Case No. 2:24-cv-1050-SPC-NPM

SERGEANT HUGHES, et al.,

Defendants.

---

**OPINION AND ORDER**

This is a civil rights case brought pursuant to 42 U.S.C. § 1983 by Plaintiff Johnny L. Jones, a Florida state prisoner confined at the Charlotte Correctional Institution (CCI) in Punta Gorda, Florida. He is *pro se* and proceeding *in forma pauperis*. (Doc. 9). Before the Court is a motion to dismiss the amended complaint (Doc. 31), filed pursuant to Fed. R. Civ. P. 12(b)(6) by the Defendants, four officials employed at CCI: Officer Ryan Davis, Sergeant Roosevelt Duncan, Sergeant Gregory Hughes, and Lieutenant David Keller. (Doc. 34). For the reasons that follow, Defendants' motion to dismiss will be granted in part and denied in part.

**Legal Standard**

In deciding a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded factual allegations in the complaint as true and view them in

a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation. The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

Jones is representing himself. Courts hold the pleadings of *pro se* litigants to a less stringent standard than pleadings drafted by attorneys. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But courts do not have a duty to "re-write" a *pro se* litigant's complaint to find a claim. *See Washington v. Dep't of Children & Families*, 256 F. App'x 326, 327 (11th Cir. 2007).

## Background

Jones's amended complaint alleges the following: On September 23, 2024, Jones was placed in a cell with no running water. He put his arm through the cell's food access flap, preventing it from being closed. Lieutenant Keller ordered a camera brought to the cell "so an orchestrated organized use of force could be done, due to [Jones] being disorderly."[1] (Doc. 31 at 5). Containers of chemical spray were also brought to the scene.

When the camera was placed in front of the cell, Jones let go of the flap. That allowed it to be closed, but no one did so. Jones then indicated he might hang himself in the cell. He tied one end of a sheet around his neck, and he climbed on a table and tried to tie the other end of the sheet around a light. Jones "declared a psychological emergency" (*id.* at 6), which Lieutenant Keller "denied" (*id.* at 4), and Jones "was not allowed to see mental health." (*Id.* at 5). Jones says he then got down from the table and was no longer being disorderly or disobedient. Specifically, he alleges he was neither obstructing the flap nor trying to hang himself, further noting that he could not tie the

[1] Rule 33-602.210 of the Florida Administrative Code governs the "Use of Force" by prison officials. Its subsection (4)(c) establishes protocols for video recording uses of force. These include a requirement that all "organized use of force incidents" are to be video recorded whenever possible. Fla. Admin. Code R. 33-602.210(4)(c)(3)(a). The rule defines "Organized Use of Force" as "[a]ny force that may be administered to control, escort, or geographically relocate an inmate, or to quell a disturbance in controlled conditions, when the immediate application is not necessary to prevent a hazard to any person." *Id.*, R. 33-602.210(1)(s). In this vein, Jones refers at times to a video recording of events underlying his claims. However, no such recording is in the record at this time.

sheet anywhere. When the officer holding the camera told Lieutenant Keller, Keller said he didn't care and that Jones would be sprayed. Rather, Jones alleges, "the Defendants were mad [and] refused to let [him] out of the cell." (*Id.* at 5). On Lieutenant Keller's order, Sergeant Duncan sprayed Jones with the chemical agent in the cell.

Jones acknowledges that after he was sprayed a third time, he tried to run out of the cell.[2] Officer Davis, carrying a shield, blocked Jones's exit and placed his feet on Jones's. With Jones held in place and unable to retreat, Officer Davis kicked him, and Sergeant Hughes "slammed the cell door back and forth on [Jones's] body." (Doc. 31 at 6). Lieutenant Keller pushed Officer Davis away from Jones, moved Jones away from the cell door, and closed it. In the altercation, Jones claims he suffered injuries causing pain to the right side of his body, including that his ribs were "hurt and bruised." (*Id.* at 8).

Following the incident, Jones was taken to the prison medical area. Meanwhile, although the chemical agent was all over the walls, floor, bed, and toilet in the cell, Lieutenant Keller ordered that the cell not be cleaned. Jones was returned to the cell area, and, again on Lieutenant Keller's order, Jones was put back in his cell wearing only his boxer shorts. Jones remained in the

---

[2] Jones states in his brief in opposition to Defendant's motion that he was sprayed twice through the flap, but the cell door was then opened, and he was sprayed again. (Doc. 36 at 3).

cell for three days exposed to the chemical agent, causing continued burning of his skin and eyes, coughing, and sneezing.

Jones sues Defendants in their individual capacities under § 1983. He claims they inflicted cruel and unusual punishment and used excessive force, in violation of the Eighth Amendment and the Fourth Amendment. Jones also maintains that Defendants violated "policy and procedure." Jones demands compensatory damages for "physical, emotional, and mental injuries," punitive damages, and a declaratory judgment.

Defendants now move to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P. (Doc. 34). They argue that Jones's allegations fail to show a violation of his constitutional rights and that, even insofar as they might, qualified immunity applies. Defendants further assert that Jones's claims for punitive damages are barred by 18 U.S.C. § 3626(a)(1)(A) and that his allegations do not support declaratory relief. Jones has filed a brief in opposition. (Doc. 36).

## Discussion

Jones is proceeding under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection

between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

Even if a plaintiff can establish a constitutional violation, "qualified immunity protects government officials from individual liability unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Snorton v. Owens*, 808 F. App'x 814, 820 (11th Cir. 2020). An official invoking qualified immunity must first show he was acting within the scope of his discretionary authority. *Id.* There is no question that Defendants here would have been acting within that scope. The burden then shifts to the plaintiff to show: (1) the official violated a federal statutory or constitutional right; and (2) the unlawfulness of the official's conduct was clearly established at the time of the alleged violation. *Id.* at 820-21. "A federal right is 'clearly established' when 'at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing is unlawful.'" *Anderson v. Vazquez*, 813 F. App'x 358, 360 (11th Cir. 2020) (quoting *D.C. v. Wesby*, 583 U.S. 48, 63 (2018)).

### A. Claims Alleging Violations of the Fourth Amendment and Prison "Policy and Procedure"

To the extent Jones seeks to recover under § 1983 for alleged violations of the Fourth Amendment or state prison policies or procedures, his claims will be dismissed with prejudice. Claims alleging excessive force against convicted

prisoners are analyzed under the Eighth Amendment's prohibition against cruel and unusual punishments, not the Fourth Amendment's guarantee against unreasonable searches and seizures. *See Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021). Likewise, claims by prisoners challenging a denial of medical care and their conditions of confinement fall under the Eighth Amendment rather than the Fourth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976); *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994); *cf. Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984) (holding the Fourth Amendment does not apply to prison cell searches). Finally, § 1983 claims cannot be founded on violations of state law, including prison regulations, policies, or procedures. *See Stalley v. Cumbie*, 124 F.4th 1273, 1287 n.12 (11th Cir. 2024).

**B. Eighth Amendment**

"[T]he unnecessary and wanton infliction of pain" qualifies under the Eighth Amendment as proscribed "cruel and unusual punishment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Eighth Amendment claims fall into three categories. Prisoners can challenge their conditions of confinement, the excessive use of force against them, and the deliberate indifference to their serious medical needs. *DeJesus v. Lewis*, 14 F.4th 1182, 1195 (11th Cir. 2021) (citing *Thomas v. Bryant*, 614 F.3d 1288, 1303–04 (11th Cir. 2010)). "[W]hat rises to the level of an 'unnecessary and wanton infliction of pain' differs based

on the type of Eighth Amendment violation alleged." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (citing *Hudson*, 503 U.S. at 5).

Jones's Eighth Amendment claims are based on four kinds of alleged action on the part of Defendants. These are that he was: (1) "not allowed to see mental health" after having "declared a psychological emergency" when he was trying to hang himself, (2) sprayed with the chemical agent without cause, (3) physically assaulted when he tried to get out of the cell after being sprayed, and (4) returned to the cell and left there for three days, wearing only boxer shorts, without the cell having been cleaned and thus remaining contaminated with the sprayed chemical. These allegations potentially implicate all three types of Eighth Amendment claims. The Court will first consider whether Jones has alleged facts showing a constitutional violation. To the extent he has done so, the Court will then address whether Defendants are protected by qualified immunity.

**1. Refusal of Mental Health Treatment**

Jones's claim based on allegations that he was not "allowed to see mental health" after he had "declared a psychological emergency" raises a denial of medical care. *See, e.g.*, *Carter v. McCullen*, No. 22-10499, 2023 WL 6120616, at *4 (11th Cir. Sept. 19, 2023). Such an Eighth Amendment claim requires a prisoner to allege facts showing (1) a serious medical need, (2) the defendant's deliberate indifference to that need, and (3) a causal link between the

defendant's indifference and his injury. *Id.* (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)).

In a prior order, this Court granted a motion by Defendants to dismiss the original complaint pursuant to Rule 12(b)(6) (*see* Docs. 1, 20, 28), including as it related to allegations that Lieutenant Keller prevented Jones from receiving mental health treatment after Jones declared a psychological emergency. (Doc. 28 at 11–12). The Court dismissed that claim without prejudice, concluding that Jones had "not explained what acts or omissions of Lieutenant Keller prevented him from receiving treatment, how Lieutenant Keller acted with deliberate indifference, or how any deliberate indifference caused him injury." (*Id.* at 12). The amended complaint does not cure those defects. Accordingly, this claim is again dismissed. (*See id.*); *see also Carter*, 2023 WL 6120616, at *4 (affirming dismissal of a similar claim, holding that the "complaint did not plausibly allege … any causal connection between [the plaintiff's] alleged injuries and his lack of medical care before the chemical spraying incident."). As Jones has already been given a prior opportunity to amend, the dismissal of this claim will now be with prejudice. *See Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014).

**2. Excessive Force**

Jones also claims that Defendants violated the Eighth Amendment by subjecting him to excessive force. The core judicial inquiry on such a claim is

"whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Sconiers*, 946 F.3d at 1265 (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). The claim includes two elements: "the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.' " *Id.* (quoting *Hudson*, 503 U.S. at 8). A claim satisfies the subjective element if the force was "sadistically and maliciously applied for the very purpose of causing harm." *Id.* The objective component "focuses on whether the official's actions were harmful enough or sufficiently serious to violate the constitution." *Id.* (cleaned up).

Jones first asserts he was subjected to excessive force based on allegations that Sergeant Duncan sprayed him with the chemical agent at Lieutenant Keller's direction without cause. "[C]orrectional officers in a prison setting can use pepper-spray to subdue an inmate as long as a valid penological reason supports the use of such force." *Sconiers*, 946 F.3d at 1264 (cleaned up). Controlling a recalcitrant inmate or preventing an inmate from inflicting self-injury or attempting to commit suicide are valid penological reasons for deploying a chemical agent. *See Grimage v. Gwara*, No. 25-13270, 2026 WL 2528761, at *2 (11th Cir. Aug. 27, 2026); *Diehl v. United States*, No. 24-10616, 2026 WL 280061, at *5 (11th Cir. Feb. 3, 2026). Still, "where chemical agents

are used unnecessarily, without penological justification, or for the very purpose of punishment or harm, that use satisfies the Eighth Amendment's objective harm requirement." *Thomas*, 614 F.3d at 1311.

In resolving the prior Rule 12(b)(6) motion aimed at the original complaint, the Court ruled that Jones failed to state an excessive force claim based on his allegations that he was sprayed with the chemical agent. (Doc. 28 at 8–9). Specifically, the Court concluded those allegations tended to show that "Lieutenant Keller had ordered Sergeant Duncan to use the chemical spray in an effort to gain control of Jones and stop his suicide attempt," insofar as "Jones had announced that he was suicidal and apparently attempted to hang himself by tying the sheet that was already around his neck to the light in his cell." (*Id.*)

Jones now insists in the amended complaint, however, that the "spray was not used to stop him from hanging." (Doc. 31 at 6). He alleges that, by the time he was sprayed, he had gotten down from the table where he had been attempting to tie the sheet to the light. (*Id.* at 5). At that point, he says, he "was no longer attempting to hang," highlighting that he "couldn't tie the sheet anywhere." (*Id.*) He also clarifies in his brief in opposition to Defendants' instant motion that he "had been away from the flap [and] was not being disorderly or disobeying orders for at least 20 minutes prior to being sprayed with [the] chemical." (Doc. 36 at 2); *see Huff v. Jackson*, No. 2:13-CV-257-FTM-

38, 2014 WL 3707914, at *2 (M.D. Fla. July 25, 2014) (Chappel, J.) (a court may consider a plaintiff's response in opposition to a Rule 12(b)(6) motion to the extent it clarifies allegations in the complaint, citing *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000)). Rather, Jones suggests that the Defendants were simply "mad" at him for his earlier disruptiveness. (Doc. 31 at 6).

Crediting the allegations of the amended complaint, the Court concludes they support that the previously volatile situation had resolved itself and that Lieutenant Keller and Sergeant Duncan lacked a penologically valid reason for causing Jones to be sprayed with the chemical agent. That potentially subjects those Defendants to § 1983 liability for the use of excessive force. *See Sconiers*, 946 F.3d at 1267–68.

Lieutenant Keller emphasizes, however, that Jones alleges it was Sergeant Duncan who actually sprayed Jones with the chemical agent. Lieutenant Keller argues he cannot be liable for that conduct because it would amount to *respondeat superior* liability, which is not allowed under § 1983. The Court disagrees.

It is true "that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (citation omitted). Instead, a supervisor is liable under § 1983 "either when the supervisor personally participates in the alleged

unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* (citation omitted). Further, such a causal connection exists when the "facts support an inference that the supervisor directed the subordinates to act unlawfully." *Christmas v. Nabors*, 76 F.4th 1320, 1330 (11th Cir. 2023). Here, Jones expressly alleges that Lieutenant Keller ordered Sergeant Duncan to spray him. Accordingly, both of those Defendants might be liable for that action under § 1983.[3]

Jones further alleges that he was subjected to excessive force when, after being sprayed for a third time, he tried to run out of the cell and was physically assaulted.[4] According to Jones, he was blocked from exiting the cell by Officer Davis carrying a shield, who then held him in place and kicked him while Sergeant Hughes "slammed the cell door back and forth on [Jones's] body." Jones alleges that Lieutenant Keller then pushed Officer Davis aside, moved Jones away from the cell door, and closed it. Jones claims he suffered injuries to the right side of his body, including bruised ribs.

---

[3] "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007) (citation omitted). However, Jones does not allege when Officer Davis or Sergeant Hughes arrived on the scene. Nor does Jones otherwise allege facts showing that either was present and in a position to intervene in the application of the chemical agent and failed to do so.

[4] Jones clarifies in his opposition brief that he was sprayed with the chemical agent two times through the food flap and then a third time after the cell door was opened. (Doc. 36 at 3).

In its order on the Defendants' prior Rule 12(b)(6) motion, the Court dismissed Jones's excessive force claim based on the physical assault as set forth in the original complaint. (Doc. 28 at 9–10). The Court there highlighted that Jones conceded that the assault followed his attempt to run out of his cell and that he did not allege whether he was resisting. (*Id.*) The Court further concluded that the complaint did not support either the objective component of the excessive force inquiry or that any Defendant had "sadistically and maliciously applied" force "for the very purpose of causing harm," rather than for the purpose of restoring order. (*Id.*)

That analysis still holds for this claim as set forth in the amended complaint. Again, Jones's allegations now support that there was not a valid justification for Lieutenant Keller to order Sergeant Duncan to spray Jones with the chemical agent. But even if spraying Jones was excessive force and it provoked Jones's attempt to flee, that cannot convert an otherwise lawful application of force by Officer Davis and Sergeant Hughes to maintain or restore order into another, independent constitutional violation. *See Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 532 (6th Cir. 2018) (holding that even if jail deputy used excessive force by pushing plaintiff into a wall, the plaintiff's "refusal to cease resistance justified other officers' attempts to regain control" (citing *County of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 427–28 (2017) (rejecting the Ninth Circuit's "provocation rule" allowing excessive force

claims under the Fourth Amendment based on an otherwise reasonable use of force where a law enforcement officer intentionally or recklessly provokes a violent confrontation, if the provocation is an independent Fourth Amendment violation)).

Prison guards are authorized to use force to maintain and restore order, including specifically to keep inmates from exiting their cells without authorization. *See McClendon v. Dep't of Juv. Just.*, 701 F. App'x 771, 773 (11th Cir. 2017). Jones again admits he was attempting to run out of his cell and does not allege whether he was resisting while engaged with Officer Davis and Sergeant Hughes. Further, Jones's description of his injuries from the altercation, that he suffered "pain to the right side of [his] body" and that "[his] ribs were hurt and bruised" (Doc. 31 at 8), remains vague and belies serious harm. "The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation" and "may also provide some indication of the amount of force applied." *Wilkins*, 559 U.S. at 37. Jones's allegations do not support that the force applied by Officer Davis or Sergeant Hughes was disproportionate under the circumstances or was "sadistically and maliciously applied" force "for the very purpose of causing harm." The amended complaint's allegations therefore still fail to establish the objective or the subjective element of an excessive force claim against Officer Davis or Sergeant

Hughes. Accordingly, those claims will again be dismissed, now with prejudice.[5] *See Cornelius*, 585 F. App'x at 1000.

Finally, Jones alleges that, after he was taken to the medical area and returned to the cell area, Lieutenant Keller ordered him placed back in his cell dressed only in his boxer shorts, where he was forced to stay for three days, despite that Lieutenant Keller had also ordered that the cell not be cleaned. It thus remained contaminated with the chemical agent. As a result, Jones says, his "skin and eyes burned for days" and he "was constantly coughing and sneezing."

The Defendants seem to frame these allegations as attempting to state a distinct Eighth Amendment claim based only on Jones's conditions of confinement. However, the Eleventh Circuit has held that "subjecting a prisoner to special confinement that causes him to suffer increased effects of environmental conditions can constitute excessive force." *Danley v. Allen*, 540

[5] That Jones cannot recover on an independent Eighth Amendment excessive force claim against Officer Davis or Sergeant Hughes does not necessarily foreclose recovery for physical injuries they inflicted. A plaintiff may, subject to qualified immunity, recover damages proximately caused by a constitutional violation. *See Mendez*, 581 U.S. at 430–31; *Jackson v. Sauls*, 206 F.3d 1156, 1168 & n.16 (11th Cir. 2000). At this stage, the Court concludes that Jones's allegations might support that his injuries from the physical assault were a proximate result of his foreseeably attempting to avoid being unlawfully sprayed with the chemical agent. *See Mendez*, 581 U.S. at 431; *County of Los Angeles v. Mendez*, 897 F.3d 1067, 1076–82 (9th Cir. 2018) (holding on remand plaintiffs could recover for being shot by police, even where such force was reasonable, because such injuries were proximately caused by a warrantless entry constituting an unreasonable search under the Fourth Amendment); *Jackson*, 206 F.3d at 1168 (holding evidence was sufficient to support that shooting death and injuries were a proximate result of an illegal stop under the Fourth Amendment).

F.3d 1298, 1308 (11th Cir. 2008) (cleaned up), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010); *see also Patel v. Lanier Cnty. Ga.*, 969 F.3d 1173, 1183–84 (11th Cir. 2020) (holding evidence sufficient to support that unnecessary confinement of a pretrial detainee in an unventilated, un-airconditioned transport van for two hours constituted excessive force in violation of due process). *Danley* applied that principle to hold that a pretrial detainee stated a claim for excessive force under the Due Process Clause based on allegations that, after being pepper sprayed, he was immediately pushed back into his poorly ventilated jail cell and left there for approximately 20 minutes, where the spray remained on him, his clothes, and in the air, causing him to have trouble breathing. 540 F.3d at 1304, 1308–09. Indeed, the *Danley* court deemed that claim viable even though the court found the deployment of pepper spray itself did not violate the Constitution. *Id.* at 1308–09. Further, *Danley* recognized that the complaint's allegations regarding the initial act of spraying the inmate and then putting him back in the poorly ventilated cell and leaving him there for about 20 minutes, subjecting him to continuing effects of the chemical, could be viewed as a single unified claim of excessive force. *Id.* at 1306.

The facts of Jones's case are in some respects different from those in *Danley*. In particular, Jones's allegations show a longer temporal break between when he was sprayed and when he was put back in his cell and

exposed to the chemical agent residue. Nor does Jones claim he was not allowed to properly decontaminate his person before being put back in his contaminated cell.

Nevertheless, the Eleventh Circuit has applied *Danley* in similar circumstances. In *Williams v. Rickman*, 759 F. App'x 849 (11th Cir. 2019), a convicted prisoner brought an Eighth Amendment claim alleging that, after he was pepper sprayed, he was taken to a shower for decontamination but was then returned to the same cell "which had been only 'half way cleaned.' " He alleged that "the cell walls and toilet were covered in pepper spray residue and that he was forced to sleep on a bare mattress that also had pepper spray residue," which "caused burns to his skin and made it difficult for him to breathe." *Id.* at 852. Based on *Danley*, the Eleventh Circuit considered those allegations "as part of the continuum of [the plaintiff's] excessive force claim." *Id.* at 853. Crediting the prisoner's allegations, the Eleventh Circuit held it "was excessive to confine him in a contaminated cell overnight on a pepper-spray-contaminated mattress when he was not causing a disturbance or after he ceased to cause a disturbance." *Id.* (cleaned up). *See also Thompson v. Smith*, 805 F. App'x 893, 903 (11th Cir. 2020) (allowing recovery of compensatory damages under 42 U.S.C. § 1997e(e) on Eighth Amendment excessive force claim based in part on prisoner being returned to uncleaned cell contaminated with pepper spray after returning from decontamination shower

and examination in medical ward). Under *Danley* and *Williams*, Jones's allegations that he was returned to his contaminated cell on Lieutenant Keller order,[6] wearing only his boxer shorts and left there for three days, causing burning of his skin and eyes, likewise support an Eighth Amendment claim under an excessive force analysis.[7]

Defendants contend, however, that that no Eighth Amendment excessive force claim can survive because, they say, Jones "describes injuries that could be considered de minimums (sic)." Defendants argue that "subjective complaints of 'injuries' cannot sustain an Eighth Amendment excessive force claim which typically requires the plaintiff to sustain a serious injury." (*Id.* at 6). In support, Defendants cite *Jimenez v. Reeder*, No. 5:08-cv-345MCR-MD, 2009 WL 700776, at *2 (N.D. Fla. March 16, 2009), which they characterize as standing for the proposition that "more than a subjective complaint of pain is needed to satisfy the 42 U.S.C. §1997e(e) requirement."

Defendants' argument confuses the elements of an excessive force claim under the Eighth Amendment and the requirements of 42 U.S.C. § 1997e(e).

---

[6] Although Jones alleges that Lieutenant Keller ordered both that the cell not be cleaned and that Jones be returned to it, Jones does not otherwise allege who might have physically placed him in the cell or who might have refused to let him leave it.

[7] Because Jones's allegations regarding his continued exposure to the chemical agent after being returned to his contaminated cell support an Eighth Amendment claim based on excessive force, the Court need not consider whether those allegations might also support an Eighth Amendment claim based on the elements of a conditions-of-confinement claim.

*See Pierre v. Padget*, 808 F. App'x 838, 843 (11th Cir. 2020). The latter is a provision of the Prison Litigation Reform Act (PLRA), providing, "No federal civil action may be brought by a prisoner … for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). The Eleventh Circuit has interpreted the statute to preclude prisoners from recovering compensatory damages (but not punitive or nominal damages) on § 1983 claims absent a showing that the prisoner was sexually assaulted or suffered a physical injury that is more than "*de minimis*." *See Hoever v. Marks*, 993 F.3d 1353, 1358–61 (11th Cir. 2021) (en banc); *Furman v. Warden*, 827 F. App'x 927, 933 (11th Cir. 2020). The Supreme Court, however, has rejected that prisoners raising Eighth Amendment excessive force claims must establish physical injuries that were "significant," "serious," or "more than *de minimis*." *See Wilkins*, 559 U.S. at 36–39. Thus, while a failure to show a physical injury that is more than *de minimis* would preclude an award of compensatory damages under § 1997e(e), that would not itself call for a dismissal of the Eighth Amendment excessive force claims *en toto*.

Further, the Eleventh Circuit has recognized that being pepper sprayed and left exposed to its continuing effects may be sufficient to support both an Eighth Amendment excessive force claim and the existence of injuries that are more than *de minimis* for purposes of § 1997e(e). *See Thompson*, 805 F. App'x

at 903. Therefore, the Court declines at to dismiss at the pleading stage Jones's Eighth Amendment claims, including insofar as they seek compensatory damages, pursuant to Defendants' argument based on the extent of Jones' alleged injuries.

**3. Qualified Immunity**

Defendants argue they are protected by qualified immunity. As explained above, the Court has concluded that the only § 1983 claims that might remain are those arising under the Eighth Amendment based on Jones's allegations related to his being pepper sprayed initially by Sergeant Duncan on Lieutenant Keller's order and related to Jones's being returned to his contaminated cell and left there, also at Lieutenant Keller's direction. The question, then, is whether Jones's Eighth Amendment right to be free from such unnecessary and excessive force was clearly established at the time. *See Haynes v. Volpelletto*, No. 23-11063, 2024 WL 1911200, at *7 (11th Cir. May 1, 2024).

The Court concludes that it was. In this circuit, qualified immunity is not available where a prisoner establishes the elements of an excessive force claim under the Eighth Amendment. *See Skrtich v. Thornton*, 280 F.3d 1295, 1303–04 (11th Cir. 2002), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2000). But even apart from that broad general rule, it was clearly established

that, in a prison setting, officials are constitutionally prohibited from pepper spraying an inmate, or leaving them exposed to the chemical residue in a confined space for an extended period, where there is not a penologically valid reason for doing so. *See Bowden v. Snider*, No. 2:22-CV-671-SPC-KCD, 2024 WL 5202782, at *4 (M.D. Fla. Dec. 23, 2024). Accordingly, neither Lieutenant Keller nor Sergeant Duncan is entitled to qualified immunity.

**C. Punitive Damages and 18 U.S.C. § 3626(a)(1)(A)**

Defendants contend that Jones's claims are due to be dismissed to the extent they seek punitive damages. Defendants rely on the PLRA—specifically 18 U.S.C. § 3626(a)(1)(A), which provides:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

The Eleventh Circuit has interpreted the statute's reference to "prospective relief" to include punitive damages, and that its reference to "prison conditions" includes the use of excessive force. *See Johnson v. Breeden*, 280 F.3d 1308, 1325 (11th Cir. 2002), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389 (2015), *as recognized in Patel*, 969 F.3d at 1185–86. Thus, in

applicable cases, § 3626(a)(1)(A) requires that a punitive damages award (1) "must be no larger than reasonably necessary to deter the kind of violations of the federal right that occurred," (2) "should be imposed against no more defendants than necessary to serve that deterrent function," and (3) "are the least intrusive way of doing so." *Id.*

However, the Eleventh Circuit has never suggested that § 3626(a)(1)(A) entirely precludes awards of punitive damages on § 1983 claims challenging prison conditions. *See Timothee v. Durborow*, No. 3:25-CV-359-JEP-LLL, 2026 WL 2516720, at *8 (M.D. Fla. Aug. 26, 2026). Rather, the Eleventh Circuit has held that the PLRA allows for punitive damages to punish defendants for willful or malicious conduct, even in the absence of physical injury. *See Hoever*, 993 F.3d at 1359. Therefore, the Court will not dismiss Jones's claims for punitive damages at this stage. *See Harris v. Cotte*, No. 2:21-CV-646-SPC-NPM, 2025 WL 317029, at *3 (M.D. Fla. Jan. 28, 2025).

**D. Declaratory Relief**

Finally, Defendants move to dismiss Jones's amended complaint to the extent it seeks declaratory relief. Specifically, Jones demands a declaratory judgment stating that Defendants' use of force was unnecessary and illegal and that leaving him in the cell was a violation of his rights.

Claims for "declaratory and injunctive relief" are "inherently prospective in nature." *Checker Cab Operators, Inc. v. Miami-Dade Cnty.*, 899 F.3d 908,

916 (11th Cir. 2018). Thus, to establish entitlement to "injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1215 (11th Cir. 2019).

The amended complaint fails to show that declaratory relief is available here. Jones's allegations concern discrete events that occurred on September 23, 2024, more than two years ago. Nothing about those events suggest that Jones faces "a real and immediate threat of repeated injury." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024). Therefore, Jones fails to establish "a substantial likelihood that he will suffer injury in the future." *Worthy*, 930 F.3d at 1215; *see also White v. Murphy*, No. 2:25-CV-75-SPC-DNF, 2026 WL 617359, at *3 (M.D. Fla. Mar. 5, 2026).

Accordingly, it is now

**ORDERED:**

Defendants' motion to dismiss (Doc. 34) is **GRANTED IN PART AND DENIED IN PART**.

1. Jones's claims based on alleged violations of the Fourth Amendment and prison "policies and procedures" are **DISMISSED WITH PREJUDICE**.

2. Jones's claim based on not being provided mental health treatment after calling a "psychological emergency" is **DISMISSED WITH PREJUDICE**.
3. Jones's claims against Officer Davis and Sergeant Hughes are **DISMISSED WITH PREJUDICE**.
4. Jones's request for declaratory relief is also **DISMISSED**.

**DONE** and **ORDERED** in Fort Myers, Florida on November 10, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-3
Copies: All Parties of Record